```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
DIANA ALVAREZ-MARQUEZ et al.,                               :
                                                            :
                              Plaintiffs,                   :
                                                            :        19-CV-11773 (PGG)
            -against-                                       :
                                                            :        OPINION & ORDER
CHAD WOLF, et al.,                                          :
                                                            :
                              Defendants.                   :
                                                            :
------------------------------------------------------------X
```

Appearances:

Julie Goldberg
Eric Hisey
Goldberg & Associates
Bronx, NY 10463
*Counsel for Plaintiffs*

Michael Byars
U.S. Attorney's Office, SDNY
New York, NY 10007
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

### I. **Background and Procedural History**

Plaintiffs commenced this action by filing a petition for writ of mandamus on December 23, 2019.[1] (*See* Doc. 1.) On December 24, 2019, a date on which the court was closed, Plaintiffs moved for emergency ex parte relief and submitted an application, a notice of motion, a memorandum of points and authorities in support ("Pls.' Mem."), and a declaration from

---

[1] Plaintiffs' petition was subsequently rejected as deficient by the Clerk's Office on December 26, 2019 and so the action was not assigned to a district court judge. On December 30, 2019, Plaintiffs refiled their petition, (Doc. 6), and on January 2, 2020, the action was assigned to Judge Paul G. Gardephe.

Plaintiffs' counsel, Julie A. Goldberg ("Goldberg Decl."), with exhibits.[2]  Specifically, they requested an order (1) requiring the Department of Homeland Security ("DHS") to accept the bond payment of $5,000 ordered by Immigration Judge Thomas J. Mulligan ("Judge Mulligan") on December 23, 2019; and (2) mandating that the Enforcement and Removal Operations ("ERO") New York Field Office of U.S. Immigration and Customs Enforcement ("ICE"), complete processing and posting of Plaintiff Henry Yuviny Marquez Paredes's bond payment and all other required activities in accordance with regulations by 3:00 p.m. Eastern Standard Time on December 24, 2019.

Later that day, in my capacity as Part I Judge, I held a telephone conference on Plaintiffs' application.[3]  Counsel for Plaintiffs and for the Government appeared at the telephone conference.  At the conference, I issued an oral decision denying Plaintiffs' application.  I now issue this written order to document and amplify the bases for that oral decision.

## II.  Legal Standard

The standard for the issuance of a temporary restraining order ("TRO") requires Plaintiffs to demonstrate:  "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor."  *MyWebGrocer, LLC v. Hometown Info., Inc.*, 375 F.3d 190, 192 (2d Cir. 2004) (citation omitted); *see AFA Dispensing Grp. B.V. v. Anheuser-Busch, Inc.*, 740 F. Supp. 2d 465, 471 (S.D.N.Y. 2010) ("It is well established that the standard for an entry of a temporary

---

[2] Plaintiffs initially brought their application and supporting documents in person to the courthouse, then subsequently e-mailed these documents to my chambers as instructed by my staff.  As of the date of this Opinion & Order, the papers have not been filed on the electronic docket.

[3] The federal courthouses were closed on December 24, 2019.  Due to the timing of the application and telephone conference, a court reporter was not available and the conference was not transcribed.

2

restraining order is the same as for a preliminary injunction."). "[A] TRO, perhaps even more so than a preliminary injunction, is an 'extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Free Country Ltd v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016) (quoting *JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 Fed. App'x. 31, 33 (2d Cir. 2015)). Moreover, a plaintiff seeking a mandatory injunction—one that will alter, rather than maintain, the status quo—must make a heightened showing of success on the merits, demonstrating a "clear" or "substantial" likelihood of success. *See N. Am. Soccer League v. U.S. Soccer Fed'n*, 883 F.3d 32, 32 (2d Cir. 2018). This heightened showing is also required where, as here, injunctive relief would provide "substantially all the relief" sought in the action. *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1026 (2d Cir. 1985), *overruled on other grounds, O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).

"Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233-34 (2d Cir. 1999) (per curiam) (internal quotation marks omitted); *accord Naden v. Numerex Corp.*, 593 F. Supp. 2d 675, 680 (S.D.N.Y. 2009) (citing *Buffalo Forge Co. v. Ampco-Pittsburgh Corp.*, 638 F.2d 568, 569 (2d Cir. 1981)) (noting that "[t]he threat of irreparable injury is a *sine qua non*"). "To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (internal quotation marks omitted). The movant must establish a likelihood of irreparable harm before the other requirements for the issuance of a preliminary injunction will be considered. *See Rodriguez*, 175 F.3d at 234. Where mandatory injunctive relief is sought, courts in this

circuit require a "strong showing" of irreparable injury. *New York ex rel. Schneiderman v. Actavis PLC,* 787 F.3d 638, 650 (2d Cir. 2015).

**III.     Discussion**

   **A.     *Summary of Plaintiffs' Factual Assertions and Arguments***

Plaintiffs are Henry Yuviny Marquez Paredes ("Paredes"), who is currently in ICE custody, and his wife, Diana Alvarez-Marquez ("Alvarez-Marquez").[4] (*See* Doc. 1.) They state that on December 23, 2019, at noon, counsel for Plaintiffs appeared before Judge Mulligan for a bond hearing. (Goldberg Decl. ¶¶ 3, 10.) At that hearing, bond was granted in the amount of $5,000. (*Id.* ¶ 3.) However, when Plaintiffs' counsel went to the appropriate ICE office with two bond supporters, they found that the office was closed. (*Id.*) Specifically, Attorney Goldberg asserts that after the bond was granted, she "immediately made [her] way to the ninth floor, at 26 Federal Plaza, with a cashier's check in the amount of $5,000.00 made out to Department of Homeland Security along with [her] client's spouse and two of their bond supporters." (*Id.*) Attorney Goldberg alleges that she was then informed that the office had closed early, and saw a posted notice stating that the office had stopped accepting new bonds at 12 p.m. that day "due to the holidays." (*Id.*; *id.* Ex. C.)[5]

Plaintiffs argue that Defendants' early closure of the bond office prevented Paredes from posting his bond and resulted in his being "unlawfully held in detention through Christmas and Christmas Eve," in violation of ICE's procedures and Plaintiffs' Fifth Amendment due process

---

[4] Although Plaintiffs' counsel represents in the complaint, declaration and memorandum that Diana Alvarez-Marquez is Paredes's wife's name, the evidence submitted suggests her name is actually Diana Avelar Marquez. In the interest of consistency, I refer to her as "Alvarez-Marquez."

[5] Attorney Goldberg's declaration is included as item A of a document entitled "Evidence in Support of TRO," submitted by e-mail on December 24, 2019, which also includes other items labeled B through H. For ease of reference, I refer to these items as exhibits to the declaration. Accordingly, "Goldberg Decl. Ex. C" refers to item C of this document, and can be located at page 20 of the evidence package.

4

rights. (*See* Pls.' Mem. Part I.)[6]  Specifically, Plaintiffs contend that the early closure violates a provision in ICE's Enforcement and Removal Operations Bond Management Handbook (the "Handbook") that states that "[a]ll ERO offices that accept bonds must serve the public from 9:00 a.m. to 3:00 p.m. local time."  (Pls.' Mem. Part VI.B.2; Goldberg Decl. Ex. B.)[7]

### B. *Irreparable Harm*

Plaintiff Paredes concedes that—unlike many of the immigration detainees who appear before courts in this district—he was granted a bond hearing and received bond.  Plaintiff Paredes claims that he "will continue to suffer extreme and irreparable harm absent an injunction" due to "Defendants' actions in prematurely closing the bond office on December 23, 2019 at 12pm, and not allowing Plaintiffs to post bond [which] violates [his] constitutional rights against unlawful detention and under the Fifth Amendment Substantive and Procedural Due Process clauses."  (Pls.' Mem. Part VI.A.1.)

Accepting Plaintiffs' factual assertions to be true for the purpose of considering whether Plaintiffs will suffer irreparable harm, and regardless of whether or not a heightened standard for a mandatory injunction would apply, Plaintiffs have failed to meet their burden of establishing that absent an injunction, they will be irreparably harmed.  Plaintiffs failed to cite any cases in any context that suggest a delay in processing a bail bond can be a deprivation that rises to the level of an unlawful detention in violation of a detainee's constitutional rights.

In this context, where the issue is the delay of two or three days—several of which were national holidays—in processing a bond, not the refusal to hold a hearing, refusal to grant bond, or the outright refusal to process a validly issued bond, Plaintiff must do more to establish

---

[6] Plaintiffs' memorandum does not include page numbers, so I cite instead to subsections in the memorandum.
[7] Exhibit B can be located at pages 14–18 of the evidence package.

5

irreparable harm than simply asserting that under the facts alleged, Plaintiff Paredes "will continue to suffer extreme and irreparable harm absent an injunction." (Pls.' Mem. Part VI.A.) Therefore, I find that Plaintiffs' conclusory assertions without the requisite supporting legal authority fail to meet their burden of establishing a likelihood of irreparable harm.

### C. *Likelihood of Success on the Merits*

Plaintiffs have not established that they would likely succeed on the merits. First, although Plaintiffs repeatedly refer to the section of the Handbook that states "[a]ll ERO offices that accept bonds must serve the public from 9:00 a.m. to 3:00 p.m. local time" as a regulation, (*see, e.g.*, Pls.' Mem. Part VI.B.2; Part VII), it clearly is not a regulation; Plaintiffs' counsel's flat, unsupported assertion that it is a regulation borders on disingenuous. The law is "clear that the internal procedures manual of an executive agency does not create due process rights in the public." *Lynch v. U.S. Parole Comm'n*, 768 F.2d 491, 497 (2d Cir. 1985) (finding that parole commission manual was not enforceable) (citing *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) (Social Security Administration claims manual is for internal use; it has no legal force and does not bind the Administration); *Morton v. Ruiz*, 415 U.S. 199, 233–35 (1974) (Bureau of Indian Affairs manual is for internal use only); *United States v. New York Telephone Co.*, 644 F.2d 953, 959 n. 10 (2d Cir.1981) (Internal Revenue Service manual does not have the effect of law); *United States v. Fifty-Three Eclectus Parrots*, 685 F.2d 1131, 1136 (9th Cir. 1982) (Customs Service manual is an internal agency guide, not intended for use of general public)). *See also Cruz-Miguel v. Holder*, 650 F.3d 189, 200 (2d Cir. 2011) ("internal guidance documents are not binding agency authority"); *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1251 (2d Cir. 1992) (internal procedures manual of National Mediation Board did not create due process rights in the public); *City of Middletown v. U.S. Postal Serv.*, No. 13 CV 4305 VB, 2014

6

WL 1508520, at *7 (S.D.N.Y. Apr. 8, 2014) (observing that "it is doubtful" that a United States Postal Service handbook on design standards "constitute enforceable regulations, as "[r]ules of agency procedure and practice which do not affect individual rights and obligations and which are not legislative in nature" are not enforceable); *United States v. 27.09 Acres of Land*, 737 F. Supp. 277, 287 (S.D.N.Y. 1990) (declining to review violation of a postal service handbook under the Administrative Procedure Act because it "[did] not purport to create individual rights or obligations").

Here, the Handbook explicitly provides—on the first page under the heading "Background"—that it and the procedures detailed within "are intended for the internal management of ICE and do not create any right or benefit, substantive or procedural, enforceable at law or in equity by a party against ICE or any agency of the Federal Government. Any failure of ICE to comply with any provisions in this document shall not be available to any person or entity as a defense, except as otherwise required by law." Enforcement and Removal Operations Bond Management Handbook, ERO 11301.1, at 1 (Aug. 19. 2015). Plaintiffs failed to mention this portion of the Handbook in their TRO papers, and never explain why, as a legal matter, the Handbook should bind ICE despite the substantial legal precedent on the non-binding nature of internal manuals of executive agencies. Plaintiffs have failed to identify, and I have not located, any authority that would (1) distinguish the Handbook from the many handbooks and internal manuals considered by other courts, (2) suggest that the Handbook creates any rights or has the force of law, or (3) support the argument that nonadherence to an internal policy set forth in the Handbook, such as early closing alleged in this case, constitutes a violation of a detainee's constitutional due process rights.

Second, Plaintiffs have not established that they had taken all of the steps necessary for

7

the bail bond to be successfully processed prior to 3 p.m.  Plaintiffs' counsel claims that after the bond was granted "[she] immediately made [her] way to the ninth floor, at 26 Federal Plaza, with a cashier's check in the amount of $5,000.00 made out to Department of Homeland Security along with my client's spouse and two of their bond supporters."  (Goldberg Decl. ¶ 3.)  This statement is false.  As the Government pointed out during oral argument, the date and time stamp on the cashier's check attached as an exhibit to Attorney Goldberg's declaration indicates the check was issued on December 23, 2019 at 3:03 p.m. at a Bank of America several blocks away from 26 Federal Plaza.  (*See* Goldberg Decl. Ex. E.)[8]

During oral argument, Plaintiffs' counsel explained that Plaintiff Alvarez-Marquez had other checks when they initially went to the ninth floor and counsel was concerned that those checks were not going to be accepted by the ERO office as adequate payment for the bond, so she directed her client to purchase a cashier's check.  Therefore, Plaintiffs have failed to demonstrate that (1) ICE had a legally cognizable duty to process Plaintiffs' bail bond paperwork and payment after 12:00 p.m. on December 23, 2019, and (2) Plaintiffs' bail paperwork and payment would have been accepted by ICE even if the office had remained open until 3:00 p.m.

Accordingly, based upon the above and the arguments made to me on December 24, 2019, it is hereby:

ORDERED that Plaintiffs' application for emergency relief is DENIED.  Plaintiffs are directed to file on the electronic docket the supporting documents that were previously submitted directly to my chambers.

---

[8] Exhibit E can be located at page 25 of the evidence package.

IT IS FURTHER ORDERED that to the extent that Plaintiffs intend to move for a preliminary injunction, they are directed to meet and confer with the Government and submit a proposed briefing schedule.

SO ORDERED.

Dated: January 7, 2020
      New York, New York

Vernon S. Broderick
United States District Judge Part I